IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Quintech Security Consultants, Inc., and Tom Sawyer Productions, Inc., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 2:11-cv-01689-PMD |
| v. | ) ) | |
| Intralot USA, Inc., | ) ) | **ORDER** |
| Defendant. | ) ) | |

This matter is before the Court upon Defendant's, Intralot USA, Inc. ("Defendant" or "Intralot") motion to dismiss Plaintiffs', Quintech Security Consultants, Inc. ("Quintech") and Tom Sawyer Productions, Inc., d/b/a Tom Sawyer Company ("TSC") (collectively, "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Having reviewed the motion and briefs submitted by the parties and the relevant statutes and case law, the Court grants Defendant's motion to dismiss.

## BACKGROUND

In the Fall of 2007, Intralot, an international company that provides lottery and gaming management services worldwide, sent a proposal to the South Carolina Education Lottery Commission ("SCELC"). The proposal was sent in response to the SCELC's Request For Proposals ("RFP"). The SCELC also implemented a Minority Business Utilization Plan that was designed to encourage offerors to engage in business ventures with small, minority-owned and female-owned businesses. In its proposal, Intralot included Quintech, a minority-owned, small business that provides security consulting and system implementation support, and TSC, a minority-owned communications firm that provides an assortment of marketing and public relations services.

1

After consideration, the SCELC accepted the proposal and awarded Defendant a Lottery Management Services contract ("contract" or "Award") worth an estimated $69.5 million. TSC knew that it was listed in the proposal prior to Defendant submitting the proposal. Quintech was unaware of its inclusion, finding out later from a third party. After receiving the Award, Defendant chose not to utilize Plaintiffs' services.

## PROCEDURAL HISTORY

On March 18, 2011, Plaintiffs filed this action against Defendant in the Court of Common Pleas for Berkeley County, South Carolina. The Complaint alleges six causes of action: (1) Breach of Contract; (2) Breach of Contract Accompanied by a Fraudulent Act; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Quantum Meruit/Unjust Enrichment; (5) Promissory Estoppel; and (6) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code § 39-5-10 *et seq*. On July 13, 2011, Defendant filed a notice of removal pursuant to diversity jurisdiction. On July 20, 2011, Defendant filed a motion to dismiss and memorandum in support. Plaintiffs filed a response to Defendant's motion on August 22, 2011, and on September 9, 2011, Defendant filed a reply.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b) (6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *F.T.C. v. Innovative Mktg., Inc.,* 654 F. Supp. 2d 378, 384 (D. Md. 2009). The Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (*citing Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950; *see also Harman v. Unisys Corp.*, No. 09-1298, 2009 WL 4506463, at *2 (4th Cir. Dec. 4, 2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## ANALYSIS

**I.     Breach of Contract, Breach of Contract Accompanied by a Fraudulent Act, Breach of the Implied Duty of Good Faith and Fair Dealing.**

Plaintiffs assert common law claims for breach of contract, breach of contract accompanied by a fraudulent act, and breach of the implied duty of good faith and fair dealing. All three claims arise out of the proposal submitted by Defendant, which Plaintiffs allege, created a binding contract. Plaintiffs maintain that (1) Defendant breached the contract by failing to utilize Plaintiffs' services as outlined in the proposal; (2) Defendant acted fraudulently by intentionally misrepresenting the volume and value of Plaintiffs' work; and (3) Defendant breached the implied covenant of good faith and fair dealing by failing to hire Plaintiffs causing Plaintiffs to suffer harm. All three causes of action require the initial formation of a contract.[1]

---

[1] "To recover in an action for breach of contract the plaintiff must, of course, prove the existence of a contract, oral or written." *W.E. Gilbert & Assocs. v. South Carolina Nat'l Bank*, 330 S.E.2d 307, 309 (S.C. Ct. App. 1985). "In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a

3

Under South Carolina law, "for a contract to arise there must be an agreement between two or more parties. There must be an offer, there must be an acceptance, and there must be a meeting of the minds of the parties involved." *Rushing v. McKinney*, 633 S.E. 2d 917, 922 (S.C. 2006). Moreover, "in order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E. 2d 65, 67 (S.C. 2005).

Plaintiffs assert that the SCELC's RFP clearly established that Defendant would be bound by the terms of the proposal, if awarded the contract. Plaintiffs argue that the offer and consideration lie in Plaintiffs inclusion in Defendant's proposal, which included Plaintiffs' capabilities and certifications and "indicated that TSC would perform work [comprising] approximately $402,000.00" and "Quintech would perform work [comprising] approximately $125,100.00." Pl.s' Opp'n Mem. at 2. Plaintiffs also claim that after Defendant won the Award, it made subsequent inquiries as to Plaintiffs' services, which Plaintiffs argue were actually offers that were accepted as evidenced by work performed. According to Plaintiffs, TSC carried out a small print job, and Quintech provided schematics, diagrams, an on-site review of a location with Intralot representatives, including a "verbal scope of work" outline, and other consulting services—all of which Defendant's proposal represented Quintech would perform as a minority partner.

The Court finds that even accepting all the facts as stated in the Complaint as true, Plaintiffs have failed to state a breach of contract claim for which relief may be granted. While Plaintiffs allege that the proposal named Plaintiffs as minority partners, the Complaint fails to

---

fraudulent act accompanying the breach." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002). And, in South Carolina, the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc*., 597 S.E. 2d 881, 884 (S.C. 2004).

allege facts establishing a binding agreement, specifically a "meeting of the minds" between the parties. *See Davis,* 620 S.E.2d at 67 ("[T]he parties must have a meeting of the minds as to all essential and material terms of the agreement."). For example, Plaintiffs acknowledge that cost, an essential term, was not agreed upon as Defendant responded that the rates were too high. Additionally, post-Award, Defendant requested even more information from Plaintiffs about its services, which establishes that the parties had yet to come to an agreement regarding the scope of work. The Court acknowledges that TSC performed one post-Award, agreed upon job, but finds that because the proposal itself did not establish a binding contract, Defendant is not bound to utilize TSC for all the services mentioned in the proposal. The Court also finds that those actions which Quintech characterizes as acceptance by partial performance—providing schematics, diagrams, an on-site review, and other consulting services—are better characterized as preliminary actions undertaken by a business attempting to secure a future services contract. *See Abt Assocs., Inc. v. JHPIEGO Corp.,* 104 F. Supp. 2d 523, 533 (D.Md. 2000) ("The type of contract initially contemplated by the parties in this case is one which parties would normally reduce to a comprehensive writing before they would bind themselves legally.").

Furthermore, although not identical, this case is very similar to *Abt Assocs., Inc. v. JHPIEGO Corp.*, 9 Fed. Appx. 172 (4th Cir. 2001). In that case, the United States Agency for International Development ("USAID") issued a formal request for applications to enter into a long-term contract to provide certain services as outlined by the Agency. *Id.* at 174. The defendant, JHPIEGO, met with the plaintiff, Abt, and discussed the preparations for the application whereby the defendant would be the prime contractor and, according to a subsequent exchange of letters, the plaintiff would be a "partner with JHPIEGO on the technical bid." *Id.* at 175. USAID ultimately entered into a contract with JHPIEGO, but after subsequent

5

unsuccessful negotiations regarding contract terms, JHPIEGO elected not to use Abt as a partner. *Id.* at 175-76. The Fourth Circuit found that the application simply "*illustrates* how [the parties] would develop and implement" the services requested, therefore, the application "by its terms, does no more than demonstrate how [the parties] would approach the job if awarded the contract. *Id.* at 177 (emphasis in original). Additionally, JHPIEGO's communications outside of the application, such as its letter offering a partnership to Abt and Abt's acceptance of its role as stipulated in the application, were not sufficient to establish an offer and acceptance necessary to create a binding contract. *Id.* (emphasis added). The Fourth Circuit held that the inclusion as a partner in an application for a government contract where "the extent of the services . . . would not be known until after the Award was made" and the agreement stated "best efforts to negotiate" a working relationship would be used, does not establish a binding, enforceable contract. *Abt Assocs.*, 9 Fed. Appx. at 175.

In this case, the Court finds that the proposal submitted by Defendant did not contain all the essential terms of a binding contract because the scope and cost of the services were not agreed upon at the time Defendant received the Award. *See Abt Assocs.*, 9 Fed. Appx. at 177 (finding that since the "costs, expenses, and staffing needs . . . could not be determined until after the Award . . . the application does not represent the parties' binding agreement."). Significantly, Plaintiffs do not allege the existence of any post-Award, signed partnership agreement or subcontract between the parties. *See Abt Assocs.*, 104 F. Supp. 2d at 533 (*citing Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 499 (S.D.N.Y. 1987) ("[T]here is a strong presumption against finding a binding agreement when the parties expressly contemplated the future preparation of and the execution of a formal contract document."). The Court finds that it is even more implausible for Quintech to claim breach of contract because a

party unknowingly named in an alleged contract clearly fails to satisfy the "meeting of the minds" element.  *See Davis v. Greenwood Sch. Dist. 50*, 620 S.E. 2d 65, 67 (S.C. 2005).

Finding that the proposal was not a binding contract, and that no subsequent binding contracts existed, the Court dismisses Plaintiffs' breach of contract claim, ergo the breach of contract accompanied by a fraudulent act and breach of the implied duty of good faith and fair dealing claims must fail also.

## II.     Quantum Meruit/Unjust Enrichment

Plaintiffs assert a common law claim for quantum meruit/unjust enrichment. Plaintiffs allege that Defendant was unjustly enriched by use in its proposal of Plaintiffs' outstanding reputations, brand values, and status as minority-owned and female-owned businesses.  Quintech alleges that it conferred a benefit on Defendant by providing services, such schematics, diagrams, an on-site review, and recommendations as to how the work would be carried out, and Defendant did not pay for them.

To prevail under a quantum meruit/unjust enrichment theory, a plaintiff must show: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Gignilliat v. Gignilliat*, 684 S.E. 2d 756, 764 (S.C. 2009).  The South Carolina Supreme Court defined benefits as "goods or services": "It is axiomatic that a claim for quantum meruit will not lie absent evidence of unjust enrichment . . . . resulting from the wrongful retention of benefits (goods or services) by the defendant." *Id.*

In *Gignilliat*, a plaintiff brought an unjust enrichment claim against a law firm for its continued use of a founding partner's name after his death.  *Id.* at 763. The court held that the allegation that the law firm "'originated business' by associating itself with the Gignilliat name is

7

too speculative" to form the basis for an unjust enrichment claim. *Id.* Here, Plaintiffs argue that the Complaint alleges more facts than in *Gignilliat*, namely the existence of a contract. However, the Court concluded above that no contract was formed between the parties. Therefore, the Court finds that Plaintiffs' allegation that Defendant obtained the Award by using Plaintiffs' names is too speculative to form the basis for an unjust enrichment claim.

The Court finds that Quintech's claim also fails. Quintech argues that it is entitled to compensation for its post-Award services and that retention by Defendant of such services without payment is inequitable. However, it is undisputed that at the same time, Defendant also requested and received cost estimates from Quintech about the potential work to be done. Thus, Quintech had no expectation of compensation for these preparatory actions because the terms were still open and being negotiated. Instead, the Court finds that Quintech's actions were nothing more than the cost of doing business in seeking the services contract. *See e.g.*, *Quandry Solutions, Inc. v. Verifone, Inc.* No. 07-097, 2009 WL 997041, at *18 (E.D. Pa. Apr. 13, 2009) ("[P]arties to failed contract negotiations may not rely on unjust enrichment to recover negotiation-related expenses. In such cases, each party seeks to advance its own interest in obtaining a valuable contract and any benefit conferred on the other party is incidental to that goal.").

Additionally, the Court notes that for the first time in its memorandum in opposition, Plaintiffs claim that a service was provided pre-Award when each company "submit[ed] materials to the Defendant about the quality and variety of services [each] provides." Pl.s' Opp'n Mem. at 4. The Court disagrees and finds that providing flyers and brochures is not a "service" as contemplated by the RFP. Instead, the materials were given to Defendant without expectation of payment, to familiarize and aid the Defendant in determining whether Plaintiffs

were capable and appropriate to be listed in the proposal. *See e.g.*, *Abt Assocs., Inc. v. JHPIEGO Corp.,* 104 F. Supp. 2d 523, 535 (D.Md. 2000) (as to a quantum meruit claim based upon services provided prior to the defendant winning the contract, the court held that "[i]t is apparent that plaintiff did not reasonably expect to be compensated for its pre-award services" because "there was no guarantee that defendant would receive the Award").

The Court finds that no "goods or services" were in fact provided by Plaintiffs, which would be inequitable for Defendant to retain, and dismisses Plaintiffs' unjust enrichment/quantum meruit claim.

### III. Promissory Estoppel

The fifth cause of action asserts a common law claim for promissory estoppel based on the allegation that Defendant made a promise to both Plaintiffs within the proposal—by naming them as minority partners, by listing each company's services, and by listing the value of those services. Additionally, Quintech alleges that a promise was made when Defendant established a verbal scope of work, accepted performance in furtherance of that promise, and did not deny the existence of the promise.

Under South Carolina, promissory estoppel requires a plaintiff prove: (1) the presence of an unambiguous promise; (2) reliance; (3) the reliance was expected and foreseeable; and (4) the promisee was injured as a result of reliance. *Davis v. Greenwood Sch. Dist. 50*, 620 S.E. 2d 65, 67-68 (S.C. 2005). Defendant argues that on its face the proposal merely stated an intention to contract with Plaintiffs, not an unequivocal promise to hire and compensate.

The Court finds that the Complaint fails to state a plausible claim for relief based upon promissory estoppel for the same reasons set forth in the preceding sections. Again, the Court finds that by naming Plaintiffs in the proposal, Defendant merely stated an intention, not a

9

promise, to contract with Plaintiffs, and as to Quintech's claim, the Court finds only evidence of two parties negotiating a potential services contract. Rather than repeating its analysis, the Court dismisses Plaintiffs' promissory estoppel claim.

### IV.     SCUTPA

Finally, Plaintiffs allege that Defendant violated the South Carolina Unfair Trade Practices Act ("SCUTPA") by acting deceptively and in bad faith in not using or intending to use Plaintiffs' services after including Plaintiffs in the proposal, and by "purposefully underutilizing their services, purloining work product, and otherwise unjustifiably severing opportunities for continued performance as contemplated by the lottery management contract." Compl. ¶ 108. Plaintiffs argue it is certainly plausible that Defendant's conduct constitutes deceptive business acts that have the potential for repetition and have caused the Plaintiffs' damages. Defendant maintains that S.C. Code § 39-5-40(a) exempts transactions permitted and administered by regulatory bodies of the State and that the response submitted to the RFP issued by the SCELC is such a transaction and therefore is exempt.

To successfully bring an action under the SCUTPA, a plaintiff must demonstrate that (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest. *Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 291 (S.C. 1998) (*See* S.C. Code Ann. § 39-5-140). To have an impact on public interest the acts or practices must have the potential for repetition and not affect only the parties to a trade or commercial transaction. *See Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992). The exemption under § 39-5-40(a) protects businesses from suit under the SCUTPA when its actions are allowed under other statutes or

regulations, so as to avoid conflict between laws. *See Ward v. Dick Dyer & Assocs., Inc.*, 403 S.E.2d 310, 312 (S.C. 1991).

Defendant argues that Plaintiffs' claim arises out of an alleged contract, which itself arises out of a proposal that is regulated and governed under the Procurement Code. Notably, Plaintiffs' memorandum in opposition does not address the applicability of the exemption. The Court finds that the Procurement Code regulates the transaction and holds that the Procurement Code is the exclusive means of resolving the dispute at hand. *See, e.g.*, *Unisys Corp. v. South Carolina Budget & Control Bd. Div. of Gen. Servs. Info. Tech. Mgmt. Office*, 551 S.E.2d 263, 273 (S.C. 2001) ("[W]e hold transactions under the Procurement Code are exempt from SCUTPA and the State's SCUTPA cause of action is not a viable claim."). Therefore, the Court dismisses Plaintiffs' SCUTPA claim.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss Plaintiffs' Complaint is **GRANTED.**

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**October 27, 2011**
**Charleston, SC**